DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant, Nancy Lisch, appeals the judgment of the Cuyahoga Falls Municipal Court that denied her motion to suppress evidence acquired as the result of an investigatory stop. We affirm.
On January 30, 1999, Patrolman Josh Miktarian initiated an investigatory stop of Defendant near the intersection of State Route 82 and State Route 91/Darrow Road in Twinsburg, Ohio. Route 82 is a four-lane, undivided road nearing the intersection with Route 91. As Route 82 approaches the stoplight at an intersection with Church Street in Twinsburg, road signs indicate that traffic in the right eastbound lane travels straight toward the intersection with Darrow Road while traffic in the left eastbound lane turns north onto Church Street. Once again, as Route 82 approaches the intersection with Darrow Road, the left lane becomes a turn lane while traffic in the right lane continues eastbound.
Prior to the stop, Patrolman Miktarian observed Defendant weaving within her lane as she drove eastward on State Route 82. He initiated a stop after noting that Defendant traveled straight in the left turn lane at the intersection of Route 82 and Church Street. At that point, he noted the odor of alcohol on Defendant's person and administered field sobriety tests. Defendant was placed under arrest for operating a motor vehicle while under the influence of alcohol and transported to the Twinsburg Police Department. At that time, a breathalyzer test was administered.
Defendant was charged with driving while under the influence of alcohol and driving with a prohibited breath alcohol content, disobeying a traffic signal or device, and weaving. On March 4, 1999, Defendant moved to suppress all evidence acquired as a result of the stop, alleging (1) that at the time that Patrolman Miktarian initiated the stop, he lacked a reasonable and articulable suspicion of any unlawful activity, and (2) that at the time of Defendant's arrest, Patrolman Miktarian did not have probable cause to believe that she was operating a motor vehicle while under the influence of alcohol. On March 10, 1999, Defendant also moved to suppress evidence acquired as a result of the breathalyzer test administered following her arrest. The trial court denied Defendant's motions on April 7, 1999. On April 28, 1999, Defendant pleaded no contest to the charges, and the trial court convicted her of each. This appeal followed.
ASSIGNMENT OF ERROR I
 The trial court erred in overruling the Defendant's motion to suppress all evidence arising from the stop of her vehicle as the stop was unlawful in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 14 of the Ohio Constitution in that as of the time of the stop the arresting officer lacked a reasonable and articulable suspicion that Defendant engaged in any unlawful activity.
ASSIGNMENT OF ERROR II
 The trial court erred in overruling the Defendant's motion to suppress the results of her breath test as the seizure of her breath sample was unlawful in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Section 14 of the Ohio Constitution in that the Defendant's consent to the breath test was involuntarily given.
In her assignments of error, Defendant has challenged the trial court's determination that the initial investigatory stop and the subsequent breathalyzer test were properly administered. We disagree.
As an initial matter, we note that the trial court conducted a hearing on Defendant's motion to suppress. Defendant has indicated that the hearing was recorded by audiotape and that no official court reporter was present. Loc.R. 5(A)(2)(a) provides:
(2) Proceedings Recorded by Videotape or Audiotape.
 (a) No Official Court Reporter. In appeals of proceedings that are not attended by an official court reporter, regardless of the means by which the proceedings are recorded, the appellant shall proceed under App.R. 9(C) or 9(D). A statement pursuant to App.R. 9(C) or 9(D) must be in written form and approved by the trial court.
(Emphasis added.) Similarly, App.R. 9(C) provides, in part:
 If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App.R. 10, who may serve objections or propose amendments to the statement within ten days after service. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval.
(Emphasis added.) Defendant prepared a statement of the evidence presented at the hearing. This statement was filed in the trial court and served on opposing counsel. There is no indication, however, that the statement was settled and approved by the trial court as required by Loc.R. 5(A)(2)(a) and App.R. 9(C). Consequently, the statement cannot be considered by this court, and our review is limited to the exhibits contained in the record.
"When considering a motion to suppress, the trial court assumes the role of trier of fact and thus, stands in the best position to resolve issues of fact and witness credibility."State v. Cumberledge (Sept. 16, 1998), Lorain App. No. 97CA006959, unreported, at 5, quoting Cuyahoga Falls v. Stephenson
(June 18, 1997), Summit App. No. 18011, unreported at 4-5. While we defer to the findings of the trial court on a motion to suppress provided that they are supported by competent, credible evidence, our review of the application of the law to the facts isde novo. State v. McNamara (1997), 124 Ohio App.3d 706, 710.
In this case, the trial court concluded that Patrolman Miktarian articulated a reasonable suspicion that Defendant violated Twinsburg Ordinance 331.34, which prohibits any driver from "operat[ing] a vehicle in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with law." The court observed that this ordinance does not require weaving across lanes, but only operation of a vehicle "without justification in a weaving manner." In construing an identical statute, this court has concluded:
 The relevant * * * ordinance provides that, "No person shall operate a vehicle in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with law." * * * The ordinance does not require that the weaving or zigzagging take the driver out of his lane before a violation of that ordinance occurs. * * * When the officer, easily driving in a straight line, followed [the defendant] and observed him weaving within his lane he had both reasonable suspicion and probable cause to stop [him] for violation of the local traffic ordinance.
(Citations omitted.) State v. Wetshtein (Nov. 4, 1998), Summit App. No. 19014, unreported, at 5.
The court observed that a videotaped record of the stop substantiated Patrolman Miktarian's observation that Defendant weaved several times within her lane over a short distance. This conclusion is, in fact, supported by the videotape generated by a camera affixed to the dashboard area of Patrolman Miktarian's cruiser, which depicts Defendant's car swerving from the far left to the far right of the left lane as she traveled eastward on Route 82. In addition, the tape indicates that Defendant proceeded straight in the left turn lane at the intersection of Church Street and Route 82.
Defendant has argued that her "minor deviation in driving" is insufficient to justify a traffic stop. We disagree. In Masonv. Loveless (1993), 87 Ohio App.3d 264, 265, the court concluded that "one small weave within [the defendant's] lane of travel was not sufficient to give the officer a reasonable and articulable suspicion that appellee was driving under the influence of alcohol." This conclusion, however, was premised upon the assumption that the investigative stop was justified solely by a suspicion that the defendant was under the influence of alcohol:
 R.C. 4511.19(A)(1) * * * "merely requires that the accused be so much under the influence of alcohol or drugs that driving is affected. A pursuing officer must therefore have observed sufficient bad driving on the part of the accused to justify stopping him or her on suspicion of driving under the influence of alcohol." * * * [The minor traffic violation at issue is not] in and of itself enough to give an officer a reasonable and articulable suspicion that the driver was under the influence of alcohol.
(Citation omitted). Id. at 266, quoting State v. Giesler
(Aug. 30, 1985), Warren App. No. CA85-02-003, unreported. See, also,Hamilton v. Lawson (1994), 94 Ohio App.3d 462, 464 (concluding that incidents of weaving across a dotted white line and within the lane of travel did not evidence a reasonable and articulable suspicion that the defendant was operating the vehicle while under the influence of alcohol).
The Supreme Court of Ohio, however, has concluded that when a police officer has probable cause to believe that a driver has committed a traffic violation, a stop is constitutionally permissible without respect to whether the officer's motive in conducting the stop may have been pretextual. Dayton v. Erickson
(1996), 76 Ohio St.3d 3, syllabus. "Such stops are reasonable even when the criminal behavior is a minor traffic violation."State v. Wetshtein (Nov. 4, 1998), Summit App. No. 19014, unreported, at 3.
Probable cause exists when the known facts and circumstances are sufficient to warrant a reasonable person in the belief that a crime has been committed. See Ornelas v. United States (1996),517 U.S. 690, 695, 134 L.Ed.2d 911, 918. A police officer may stop a civilian to investigate unusual behavior, even absent probable cause to make an arrest, when the officer reasonably suspects that the civilian is engaged in criminal activity. Statev. Andrews (1991), 57 Ohio St.3d 86, 87, certiorari denied (1991),501 U.S. 1220, 115 L.Ed.2d 1115, citing Terry v. Ohio (1968),392 U.S. 1, 20 L.Ed.2d 889. The reasonable suspicion required for a valid investigatory stop is a less demanding standard than probable cause in the quality, reliability, and content of the evidence required. State v. Turner (Apr. 1, 1998), Wayne App. No. 96CA0096, unreported, at 5, citing Alabama v. White (1990),496 U.S. 325, 330, 110 L.Ed.2d 301, 309. Because he observed that Defendant was presently in violation of a traffic ordinance, Patrolman Miktarian had both a reasonable suspicion of criminal activity and probable cause to stop Defendant's vehicle. SeeState v. Wetshtein (Nov. 4, 1998), Summit App. No. 19014, unreported, at 5. Defendant's first assignment of error, therefore, is without merit.
Defendant has also argued that the results of her BAC test should have been excluded by the trial court because her consent to the test was based on "inaccurate and misleading advice" offered by police.
Pursuant to R.C. 4115.19.1 [4511.19.1], any person operating a motor vehicle on public roads in Ohio is deemed to have given consent to a chemical tests "administered at the request of a police officer having reasonable grounds to believe the person to have been operating a vehicle * * * while under the influence of alcohol[.]" R.C. 4115.19.1 [4511.19.1](A). Failure to submit to such a test results in an automatic suspension of driving privileges for a period of at least one year. R.C. 4115.19.1 [4511.19.1](E). When a driver submits to a test that yields a breath alcohol concentration of .100 or greater, the driver's license is administratively suspended for a period of at least ninety days. R.C. 4115.19.1 [4511.19.1](D)(2).
In the course of effecting an administrative suspension, the arresting officer must send a sworn report to the registrar that affirms:
 [t]hat the officer asked the person to take the designated chemical test, advised the person of the consequences of submitting to the chemical test or refusing to take the chemical test, and gave the person the [notification] form described in division (C)(2) of this section.
R.C. 4115.19.1 [4511.19.1](D)(1)(c)(iii). A driver may appeal the administrative suspension on the grounds of ineffective notice at the initial court appearance. R.C. 4115.19.1 [4511.19.1](H)(1)(c). For the purposes of determining whether consent to administer a chemical test with respect to an administrative license suspension was validly given, the "notice requirement of R.C. 4115.19.1 [4511.19.1](C) is satisfied by reading to the arrestee the language of R.C. 4115.19.1 [4511.19.1](C)(2)(b)[.]" Bryan v. Hudson
(1997), 77 Ohio St.3d 376, syllabus.
Defendant has not pursued an appeal from the trial court's denial of an appeal of the administrative license suspension. Rather, she has appealed the denial of a motion to suppress the results of the BAC test from use in determining the charges against her. Accordingly, she has argued that the administration of the test constituted a warrantless search for which her consent was not voluntarily given, alleging that the arresting officer framed his notification of implied consent in such a way that she was left with no realistic option of refusal.
Consent to chemical testing arises by implication when a defendant has been arrested for driving under the influence of alcohol. Fairfield v. Regner (1985), 23 Ohio App.3d 79, 83; R.C. 4511.19.1(A). Cf., State v. O'Grisek (Feb. 24, 1993), Medina App. No. 2130-M, unreported, at 3 (noting that R.C. 4511.19.1 "has eliminated a requirement for actual consent"). The Supreme Court of Ohio has concluded that the implied consent provisions of R.C. 4511.19.1(A) do not give rise to searches and seizures in violation of the Fourth Amendment. State v. Starnes (1970), 21 Ohio St.2d 38, paragraph one of the syllabus. "One lawfully accused of operating a motor vehicle while intoxicated has no constitutional right to refuse to take a reasonably reliable chemical test."Akron v. Potts (Oct. 30, 1996), Summit App. No. 17768, unreported, at 3. Consequently, a chemical test administered in accordance with R.C. 4511.19.1 following arrest, pursuant to implied consent, does not constitute an unreasonable search and seizure.
In this case, the videotape of the Twinsburg Police Department's intake procedure indicates that the arresting officer notified Defendant pursuant to R.C. 4511.19.1(C)(1) by reading the pertinent statutory language. Defendant expressed an ongoing concern that she would be unable to drive to her workplace in the days between her arrest and her initial appearance in municipal court. The arresting officer stated that if her breath alcohol concentration was in excess of the maximum permissible by law her license would be suspended until her initial appearance, at which time the trial court would grant occupational driving privileges.
Pursuant to R.C. 4511.19.1(I), any driver whose license has been administratively suspended may petition the court for occupational privileges. With the exception of situations in which the court is mandated to deny privileges, the determination of whether privileges should be granted is within the trial court's discretion. See R.C. 4511.19.1(I). With respect to the complexity of Ohio's implied consent law, the Supreme Court has observed that police officers should not be expected to assess the factors that contribute the actual length of an administrative suspension:
 There are so many factors to be considered by a police officer that it would be difficult even to begin to try to make an assessment — factors such as accurate prior arrest or conviction history, prior refusals or consents, lack of a driver's license, municipal violations, etc. See R.C. 4511.19.1(E) and (F). These convoluted, detailed requirements are almost impossible to assess accurately in the arrest setting and, we believe, were intended by the legislature to be determinations made by a court at the time of the ALS hearing.
Bryan v. Hudson, 77 Ohio St.3d at 380. The complexity of the provisions governing occupational privileges presents a similar challenge.
Although the arresting officer in this case made minor misstatements with respect to the provisions of R.C. 4511.19.1(I), he fully complied with the notification requirements of R.C. 4511.19.1(C)(1). The BAC test was, therefore, administered in accordance with the demands of R.C. 4511.19.1, and Defendant's consent was implied by statute. Her second assignment of error is overruled.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Cuyahoga Falls Municipal Court, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
LYNN C. SLABY, FOR THE COURT.
BAIRD, P.J., BATCHELDER, J., CONCUR.