[Cite as *State v. Johns*, 2019-Ohio-4269.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 19-CA-5 |
| DAVID W. JOHNS, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Licking County
                             Court of Common Pleas, Case No.
                             18CR00445

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      October 16, 2019

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

WILLIAM HAYES                         KEVIN GALL
Licking County Prosecutor's Office    33 West Main St., Ste 109
By: DARREN M. BURGESS                 Newark, OH 43055
20 South Second St., 4th Floor
Newark, OH  43055

*Gwin, P.J.*

{¶1}    Defendant-appellant David Johns, Jr. ["Johns"] appeals from the December 18, 2018 Judgment Entry of the Licking County Court of Common Pleas that overruled his motion to suppress.

*Facts and Procedural History*

{¶2}    The entire stop and interaction that followed were captured on the Trooper Untied's cruiser's video and audio recording system.

{¶3}    On February 16, 2017 around 4:59 p.m., Trooper Drew Untied with the Ohio State Highway Patrol observed a gray Toyota Camry driving on Canal Road in Union Township, Licking County, Ohio traveling at 44 miles per hour in a 35 mile per hour zone and a traffic stop was initiated.  The stop occurred at 5:00 p.m. Johns was identified as the driver of the vehicle. Trooper Untied made contact with Johns and advised him of the reason for the stop.  Johns did not have a driver's license so he gave the Trooper his social security number.  Trooper Untied returned to his cruiser at 5:02 p.m., ran Mr. Johns' social security number through his in-car computer system, and discovered several suspensions on Johns' license.  Trooper Untied returned to the car at 5:04 p.m. and informed Johns that his driver's license was under suspension.  Trooper Untied then had the passenger, Jennifer Dymek exit the vehicle for the purpose of determining the status of her license.

{¶4}    Ms. Dymek gave Trooper Untied her social security number.  She told Trooper Untied that she had a valid driver's license. T. at 48.  A conversation ensued in which Ms. Dymek asked the officer various questions and Trooper Untied asked Ms. Dymek about contraband. Trooper Untied returned to his cruiser to run Ms. Dymek's information at 5:11 p.m.  Trooper Untied at this time requested that a canine unit be dispatched to his location.  Trooper Untied

determined that Ms. Dymek's license was under suspension. At approximately, 5:12 p.m. Ms. Dymek got out of the car. Trooper Untied exited his cruiser and asked her what she was doing. Ms. Dymek told the trooper that she was going to look for her identification.

{¶5} At approximately 5:13 p.m., Trooper Untied returned to the car. He inquired of Ms. Dymek about the movements in the car and what she was doing with her hands. At 5:15 p.m., Trooper Untied had Ms. Dymek step out of the car. At this time, Deputy Tanner Vogelmeir and Deputy Adam Hoskinson, the canine handling officers arrive. The drug-sniffing dog alerts on the car at approximately 5:16 p.m.

{¶6} A search was conducted on the vehicle and a plastic container with methamphetamine, marijuana, and drug paraphernalia was discovered in the coat Ms. Dymek was holding over top of her. (Tr. at 18). Johns was questioned and admitted that the coat and the items found inside the coat were his.

{¶7} Johns was indicted in the Licking County Common Pleas Court on August 9, 2018, with one count of aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1)(b), a felony of the third degree. On October 17, 2018, counsel for Mr. Johns filed a motion for leave to file a motion to suppress instanter, which the trial court granted on that same date. On October 31, 2018, the motion to suppress was heard by the trial court. On December 18, 2018, the motion to suppress was denied by the trial court in a written decision. Johns thereafter entered a plea of no contest to the sole count of the indictment and was sentenced to serve twenty-four months in prison.

*Assignment of Error*

{¶8} Johns raises one Assignment of Error,

**{¶9}** "I. THE TRIAL COURT ERRED IN DETERMINING THAT THE TROOPER DID NOT UNREASONABLY EXTEND THE DURATION OF THE TRAFFIC STOP BEYOND THAT WHICH IS CONSTITUTIONALLY PERMISSIBLE."

*Law and Analysis*

**{¶10}** In his sole assignment of error, Johns argues the trial court erred by overruling his motion to suppress. The parties agree that the vehicle was lawfully stopped. The question in the case at bar is whether the lawful detention for the traffic infraction became an unlawful detention when the officer decided to call for the use of a narcotics-detection dog to sniff around exterior of the vehicle John was driving.

**STANDARD OF APPELLATE REVIEW.**

**{¶11}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534

U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

### ISSUE FOR APPEAL.

*Whether the lawful detention for the traffic infraction became an unlawful detention when the officer decided to call for the use of a narcotics-detection dog to sniff around exterior of the vehicle Johns was driving.*

{¶12} In the case at bar, at approximately 5:11 p.m., Trooper Untied requested a canine handler report to his location. The officer and the drug-sniffing dog arrived at approximately 5:15 p.m. Accordingly, the traffic stop was not delayed to await the arrival of the drug-sniffing dog. A delay of four minutes can hardly be characterized as unreasonable.

{¶13} The use of a drug detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. *See Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842(2005); *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110(1983); *State v. Carlson,* 102 Ohio App.3d 585, 594, 657 N.E.2d 591(9th Dist.1995); *United States v. Seals*, 987 F.2d 1102, 1106(5th Cir.1993). Further, if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband. *United States v. Reed*, 141 F.3d 644(6th Cir.1998), (*quoting United States v. Berry,* 90 F.3d 148, 153(6th Cir.1996), cert. denied 519 U.S. 999 (1996)); *accord, United States v. Hill*, 195 F.3d 258, 273(6th Cir.1999); *United States v. Diaz,*

25 F.3d 392, 394(6th Cir.1994); *State v. French*, 104 Ohio App.3d 740, 663 N.E.2d 367(12th Dist.1995), *abrogated on different grounds, City of Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091(1996).

{¶14}   The Ohio Supreme Court has held,

"[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932].  This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, Preble App. No. CA2003–03–007, 2004–Ohio–184 [2004 WL 77617], ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660].  "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

*State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, ¶ 12.  In order to justify a continued detention beyond the normal period required to issue a citation the officer must have a "reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili*, ¶ 15.  "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. No.2001–L–205, 2003–Ohio–702, ¶ 30, *citing State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988).

{¶15} The initial stop occurred in this case at approximately 5:00 p.m. The dog alerted to drugs in the car at approximately 5:16 p.m. In this case, the traffic stop was not unreasonably prolonged beyond the time required for the initial purpose of the stop. There is no dispute that the stop for the speeding violation was lawful. Because the occupants of the car were lawfully detained for the traffic violation, Trooper Untied did not need reasonable suspicion of further criminal activity to ask for the driver's license or to order the passenger from the car. His request for the passenger's identification added no appreciable additional time to the detention. Confronted with a driver and a passenger carrying no license or identification, Trooper Untied was required to manually enter the information into the system and await a photograph of the individuals to insure that he was dealing with the same individuals.

{¶16} The United States Supreme Court has held that an officer making a traffic stop may order passengers to get out of the vehicle pending completion of the stop. *See Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41(1997). An officer may also ask the driver and passengers about matters unrelated to the traffic stop itself, so long as those questions do not measurably extend the duration of the stop. *Rodriguez* at 1615; *Johnson* at 333. As the United States Supreme Court has repeatedly held, mere police questioning does not constitute a seizure. *Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005); *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Muehler* at 101 *citing Bostick* at 434–435. As long as a detention is not prolonged by the questioning, there is no additional seizure within the meaning of the Fourth Amendment. Id. For example, officers do not need reasonable suspicion to ask a detained individual for her name,

date and place of birth, or immigration status. *United States v. Alexander*, 467 Fed.Appx. 355, 362 (6th Cir.2012); *United States v. Fernandez,* 600 F.3d 56 (1st Cir.2010); United *States v. Soriano–Jarquin,* 492 F.3d 495 (4th Cir.2007). *See State v. Chagaris,* 107 Ohio App.3d 551, 669 N.E.2d 92 (9th Dist.1995); *State v. Emmons,* 1st Dist. Hamilton No. C-150636, 2016-Ohio-5384, ¶15.

{**¶17**}   In *State v. Robinette*, the Ohio Supreme Court observed,

> In sum, *Royer*[1] and *Brown*[2] set out a standard whereby police officers, under certain circumstances, may briefly detain an individual without reasonably articulable facts giving rise to suspicion of criminal activity, if the detention promotes a legitimate public concern, e.g., removing drunk drivers from public roadways or reducing drug trade.
>
> In the case at bar, we find that, pursuant to *Royer* and *Brown*, Officer Newsome was justified in briefly detaining Robinette in order to ask him whether he was carrying any illegal drugs or weapons pursuant to the drug interdiction policy, because such a policy promotes the public interest in quelling the drug trade.

80 Ohio St.3d 234, 241, 1997-Ohio-343, 685 N.E.2d 762.

{**¶18**}   In the case at bar, Trooper Untied spoke to the passenger at approximately 5:05 p.m.  His purpose initially was to determine whether Ms. Dymek had a valid driver license in order to allow her to drive the car from the scene after Trooper Untied finished with Johns' citations. He returned to his cruiser at approximately 5:11 p.m. to complete writing the citations for Johns. During the six-minute period, Trooper Untied asked Ms. Dymek about the couple's activities, and whether they were carrying any illegal drugs.  Ms. Dymek, who was not driving the car at the

---

[1] *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229(1983).
[2] *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2673, 61 L.Ed.2d 357(1979)

time of the stop, and who did not own the car, was extremely nervous, volunteered information and asked Trooper Untied questions.

{¶19}   Ms. Dymek exited the car on her own at approximately 5:12 p.m. Trooper Untied can then be heard asking Dymek about her movements and her hands.  He asked her if there were any weapons in the car.  Trooper Untied testified during the suppression hearing that after returning to his vehicle, and while in the process of writing a citation, Ms. Dymek began making furtive, suspicious movements including putting her hands in her jacket, pulling a coat over her head and sinking down in her seat. Trooper Untied had not completed Johns' citations before Ms. Dymek exited the car.

{¶20}   The issue in the case at bar becomes whether the six-minute questioning of Ms. Dymek by Trooper Untied can be considered as measurably extending the duration of the stop. Trooper Untied's questioning of Ms. Dymek was reasonably related to a legitimate public concern, e.g., reducing the drug trade.  Trooper Untied was not stalling, as he had not yet called for the drug-sniffing dog.  Upon observing Ms. Dymek exit the car and further observing Ms. Dymek putting her hands in her jacket, pulling a coat over her head and sinking down in her seat, Trooper Untied had reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop.

{¶21}   Nothing in the record suggests that the detention of Johns "was of sufficient length to make it constitutionally dubious."  *See Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, at ¶ 14.  Once the drug dog alerted to the vehicle, police had probable cause to search that vehicle for contraband.

{¶22}   No violation of Johns' Fourth Amendment rights has been demonstrated. Therefore, we find the trial court correctly denied Johns' motion to suppress evidence.

{¶23}  Johns' sole assignment of error is overruled.

{¶24}  The judgment of the Licking County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, John, J., and

Delaney, J., concur