[Cite as *State v. Harbin*, 2020-Ohio-4187.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | | Hon. John W. Wise, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| JUSTIN HARBIN | : | | Case No. 2020 AP 02 0003 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Tuscarawas County
Court of Common Pleas, Case No.
2019 CR 05 0215

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     August 21, 2020

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

MICHAEL J. ERNEST                    MARK A. PERLAKY
Assistant Prosecuting Attorney       Assistant Public Defender
Tuscarawas County                     Tuscarawas County Public Defender
125 East High Avenue                  153 N. Broadway St.
New Philadelphia, Ohio 44663        New Philadelphia, Ohio 44663

*Baldwin, J.*

{¶1}   Justin T. Harbin appeals the decision of the Tuscarawas Court of Common Pleas denying his motion to suppress the evidence of items removed from a vehicle. Appellee is the State of Ohio.

### STATEMENT OF FACTS AND THE CASE

{¶2}   Appellant, Justin T. Harbin, was indicted for Aggravated Possession of Drugs in violation of R.C. 2925.11(A) and Illegal Use or Possession of Paraphernalia in violation of R.C. 2925.14(C). Harbin filed a Motion to Suppress arguing that law enforcement officers did not have reasonable, articulable suspicion to stop or detain him without a warrant, and that an inventory search of his vehicle was improper.  The trial court conducted a hearing on the motion and the testimony of Deputy Cole Morris and Sergeant Travis Stocker was offered by the appellee.

{¶3}   On January 7, 2019 at approximately 5:00 AM, Deputy Cole Morris and Sergeant Travis Stocker of the Tuscarawas County Sheriff's Office responded to a report of an alleged home invasion and assault.  The dispatcher provided a description of the alleged assailant as a male in a dark sweatshirt and beanie/ski cap. When the deputies arrived at the home, they were met by the purported victim and witnesses.  The victim was bleeding from a head wound and was difficult to comprehend. Sgt. Stocker described the victim as "talking out of his mind" and not "making a whole lot of sense." The witnesses provided a description of the assailant as a male in dark clothing wearing a dark ski cap, but their statements regarding the incident were inconsistent. After being questioned the victim became frustrated, stated he would not pursue the matter any further and asked the deputies to leave.

**{¶4}** As the deputies left the home, they observed a vehicle in a storage unit parking lot within fifty yards of the home, stationary but with the engine running. The deputies saw that the occupant of the vehicle was wearing clothing that matched the description of the assailant given to the officers by the witnesses, so they decided to approach the driver.   Deputy Morris drove into the parking lot and the vehicle began to move, so he activated his overhead lights to stop the vehicle. After identifying the driver as Justin Harbin, Deputy Morris discovered he was subject to an arrest warrant. The deputy removed him from his vehicle, placed him under arrest and in the back of the cruiser.

**{¶5}** During an inventory search of Harbin's vehicle, Sergeant Stocker discovered a pipe and a substance later identified as methamphetamine.

**{¶6}** Harbin was indicted for Aggravated Possession of Drugs in violation of R.C. 2925.11(A) and Illegal Use or Possession of Paraphernalia in violation of R.C. 2925.14(C).   Harbin pleaded not guilty and filed a motion to suppress the evidence recovered from the vehicle, contending that the stop was made without reasonable and articulable suspicion that Harbin had committed a crime.

**{¶7}** The trial court conducted an oral hearing, considered post-hearing briefs and denied the motion to suppress finding that:

> the encounter with Defendant by the Law Enforcement Agents of the Tuscarawas County, Ohio Sheriff's Office on1/7/2019 which underpins the Indictment in this case was consensual and predicated upon reasonable, articulable suspicion of the Defendant having engaged in criminal conduct***.

**{¶8}** Harbin changed his plea to no contest, the plea was accepted and the trial court found him guilty. He was sentenced to one year of unsupervised community control and seventy five hours of community service. The sentence was suspended pending the resolution of this appeal.

**{¶9}** Harbin filed a timely appeal and submitted one assignment of error:

**{¶10}** "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE IN THE CASE BECAUSE THE CITING OFFICER DID NOT HAVE REASONABLE SUSPICION OR PROBABLE CAUSE TO STOP APPELLANT AND/OR HIS VEHICLE."

## STANDARD OF REVIEW

**{¶11}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside*, supra; *Dunlap*, supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside, supra,* quoting *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122

S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra. State v. Johns*, 5th Dist. No. 19-CA-5, 2019-Ohio-4269, 146 N.E.3d 1286, ¶ 11.

**{¶12}** Harbin contends that the trial court erred by finding that Harbin's encounter with the deputies was consensual and the facts available to the deputies when the stop was made did not support a conclusion that the deputies had reasonable, articulable suspicion that a crime had occurred. We review the trial court's fact finding for abuse of discretion and the application of the law to those facts de novo.

**ANALYSIS**

**{¶13}** Harbin focuses his argument on the trial court's comment that the encounter between he and the deputies was consensual and ignores the trial court's additional conclusion that it was "predicated upon reasonable, articulable suspicion of the Defendant having engaged in criminal conduct ***." While the facts support a conclusion that the deputies approach and conversation with Harbin was not consensual, even if we were to conclude that the trial court erred in that respect, we must accord weight to the trial court finding that the deputy had a reasonable articulable suspicion that Harbin had engaged in criminal activity.

**{¶14}** Interactions between citizens and law enforcement officers can fall within three distinct categories: a consensual encounter, an investigative detention, and an arrest. *State v. Taylor*, 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60(1995).

**{¶15}** "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person

is free not to answer and walk away." *Taylor* at 747 quoting *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Taylor, supra* at 747-748.

{¶16} The trial court found that the encounter was consensual, but after reviewing the transcript of the hearing, we find the record reflects more than a consensual encounter. Deputy Cole and Morris stopped Harbin because they believed he matched the description of the assailant provided by the victim and witnesses. When Deputy Morris pulled into the parking lot where they saw Harbin in a vehicle, Harbin began to move and Deputy Morris "activated [his] overhead lights to **stop** the vehicle to check on the driver." (Emphasis added.) During cross examination Deputy Morris was asked about activating the lights on his cruiser and he conceded that "I believe I did activate them to **stop** the vehicle" and that Harbin was not free to leave. (Emphasis added.) Deputy Morris told Harbin that he was stopped because the deputy was investigating the home invasion nearby.

{¶17} The deputy's show of authority, illuminating his overhead lights, with the goal of bringing Harbin to a halt so that he could question Harbin regarding the home invasion is not a consensual encounter. While the record does not reveal Harbin's subjective response, both deputies clearly intended to stop Harbin to question him in relation to the home invasion that had been reported. We find the trial court's conclusion that this encounter was consensual unsupported by the record, but that does not end our

analysis.  The trial court also held that the encounter was "predicated upon reasonable, articulable suspicion of the Defendant having engaged in criminal conduct" more commonly described as an investigatory or "Terry" stop.

**{¶18}** In *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is not probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id*. at 21. This "reasonable suspicion" constitutes something less than probable cause. *State v. Logan*, 5th Dist. Richland No. 07–CA–56, 2008–Ohio–2969, ¶ 15.

**{¶19}** An investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer, "who must react to events as they unfold." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus; *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" *Terry, supra* at 21, but the officer need not provide proof beyond a reasonable doubt that the defendant's conduct has satisfied the elements of the offense. *State v. Willis*, 5th Dist. Licking No. 14 CA 103, 2015–Ohio-3739, ¶ 25.

**{¶20}** We find the specific and articulable facts in this case and the rational inferences to be drawn from them warrant the intrusion.  The deputies responded to

allegations of a home invasion and an assault at approximately 5:00 AM.  The victim had a laceration near his left eye, a gash in the back of his head and the left side of his face was covered in blood. The deputies received a description of the assailant when they were dispatched to the scene and the victim and witnesses provided a similar description. The witnesses' versions of facts suffered from inconsistencies, but the description of the alleged perpetrator was not clearly described as a fact that was affected by the conflicting statements.  The officer's left the victim at approximately 5:30 A.M. and noticed Harbin in a vehicle haphazardly parked in a storage unit parking lot near the location of the offense wearing a beanie and a sweatshirt that matched the description of the assailant's clothing. Standing alone, none of the facts would have been sufficient to warrant a *Terry* stop, but when viewed collectively, we hold that the totality of the circumstances comprised of these facts and the inferences that can be drawn from the facts provides a reasonable, articulable, suspicion to support the deputies' investigatory stop of Harbin.

**{¶21}** We find that the deputies' stop of Harbin was supported by a reasonable, articulable suspicion that he had been involved in a criminal act and that, therefor, the trial court did not err in denying appellant's motion to suppress the evidence. The first assignment of error is overruled and the decision of the Tuscarawas County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, John, J. concur.