[Cite as *State v. Crane*, 2023-Ohio-188.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2022-CA-00044 |
| COREY CRANE | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:        Criminal appeal from the Licking County
                                Court of Common Pleas, Case No. 2021-
                                CR-00386

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         January 23, 2023

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

CLIFFORD MURPHY                         W. JOSEPH EDWARDS
Assistant Prosecutor                    511 S. High Street
Licking County Prosecutor's Office      Columbus, OH 43215
20 S. Second Street
Newark, OH 43055

*Gwin, P.J.*

{¶1} Appellant, Corey W. Crane ["Crane"] appeals the September 27, 2021 judgment entry of the Licking County Court of Common Pleas, Licking County, Ohio overruling his motion to suppress.

*Facts and Procedural History[1]*

{¶2} On July 15, 2021, the Licking County Grand Jury returned a five-count indictment against Crane charging him with: C o u n t one, Aggravated Possession of Methamphetamine in violation of R.C. 2925.11(A)(C)(1)(e), a first-degree felony; Count two, Aggravated Trafficking in Methamphetamine in violation of R.C. 2925.03 (A)(2)(C)(1)(f), a first-degree felony; Count three, Carrying Concealed Weapons in violation of R.C. 2923.12(A)(2), a fourth-degree felony; Count four, Improperly Handling Firearms in a Motor Vehicle in violation of R.C. 2923.16(B), a fourth-degree felony; and Count five, Receiving Stolen Property in violation of R.C. 2913.51(A), a fourth-degree felony. The indictment also contained Forfeiture Specifications for U.S. Currency pursuant to R.C. 2981.02(A)(1)(B) & 2941.1417(A), Vehicles pursuant to R.C. 2981.02(A)(1)(B) & 2941.1417(A), Firearms pursuant to R.C. 2981.02(A)(1)(C) & 2941.1417(A), and Other objects specified in an attached list pursuant to R.C. 2981(A)(1)(A) & 2941.1417(A).

{¶3} Crane filed a motion to suppress August 18, 2021. The trial court conducted an evidentiary hearing on the motion on September 24, 2021. The trial court summarized the evidence produced during the suppression hearing as follows.

---

[1] A transcript of the September 24, 2021 suppression hearing has not been filed with this Court. Therefore, the facts are taken from the trial court's September 27, 2021 Judgment Entry [Docket Entry No. 43].

{¶4} Detective Woodyard testified that he had been conducting surveillance at the Red Roof Inn in Licking County, Ohio, as it was noted for drug activity. Detective Woodyard testified he saw a silver Honda pull up into the parking lot of the Red Roof Inn, and noted a man walk from a vehicle into the hotel carrying a silver lockbox. Detective Woodyard testified this appeared to him to be perhaps indicative of drug trafficking as the box was too small to be used for luggage. Also, immediately after the man carrying the lockbox from the silver Honda went into the hotel, another vehicle pulled up and parked immediately next to the silver Honda. Detective Woodyard testified this was notable because the parking lot was otherwise empty, and given all of the parking spaces in the lot, this car parked right next to the silver Honda. Detective Woodyard testified a woman exited the newly arrived car and went into the Red Roof Inn and emerged almost immediately and got into the car and left. The man carrying the silver lockbox similarly came from the Red Roof Inn and got into his car to leave. Detective Woodyard ran the license plates on the vehicle and discovered they were registered to a different type of car. Detective Woodyard radioed Officer Prouty, whom he knew to be in the area, to conduct a traffic stop for the fictitious license plates.

{¶5} Deputy Justin Prouty of the Muskingum County Sheriff's Office testified that on July 6, 2021, he was working for the Central Ohio Drug Task Force in Licking County, Ohio. He received information from Detective Woodyard, who was conducting surveillance at the Red Roof Inn in Licking County, Ohio, that a silver Honda was being operated with license plates registered to a different vehicle.

{¶6} Officer Prouty made contact with Crane, told him why he had stopped him, and asked him for his operator's license. Crane did not have a driver's license on his person. Accordingly, Officer Prouty asked Crane to accompany him back to his cruiser so that he could confirm his information. Officer Prouty further testified that Crane had rolled up the window to his car upon stopping, initially refused to exit the vehicle, refused a request to be searched prior to coming back to the police cruiser, and refused a consent to search the vehicle.

{¶7} Officer Prouty testified it usually took him 10 to 15 minutes to write a traffic ticket or a warning. Officer Prouty authenticated State's Exhibit No. 3, which is an abstract of the printout from the dispatcher indicating the times the officers checked their positions or actions with the dispatcher. The abstract indicates that Officer Prouty arrived on the scene at about 11:05 a.m. and conducted the traffic stop. Officer Prouty indicated that Detective Woodyard arrived a minute later, and that once Crane had been taken back to his vehicle, Officer Prouty requested Detective Woodyard to complete the traffic citation or warning. Officer Prouty then removed his K-9, D'Jango from his cruiser, to conduct a free air sniff of the motor vehicle. Officer Prouty testified that by 11:16 a.m., his dog had completed the sniff and alerted on Crane's vehicle. Officer Prouty further testified to the K-9's training certification as current and to the dog's reliability. He testified the dog alerted to the passenger area where Officer Prouty located a silver lockbox on the passenger floorboard.

{¶8} Upon locating the silver lockbox after the positive K-9 dog alert, Crane refused to permit a search of the lockbox. The lockbox was opened without his

consent, and a large amount of what appeared to be methamphetamine was found inside. Crane was placed under arrest and searched. A handgun was found on Crane's person.

{¶9}  Detective Woodyard testified that once Officer Prouty had conducted a traffic stop, that he parked nearby and walked up to the scene to provide some backup for Officer Prouty until other officers could arrive. He testified he stationed himself in the position where he could observe both the car and Deputy Prouty and Crane after Crane was removed from the vehicle.

{¶10} Detective Woodyard testified that Officer Prouty asked him to prepare the citation so that he might conduct the K-9 sniff of the vehicle. Detective Woodyard testified that he initially was unsure of Crane's identity as he assumed Crane would be the person to whom the license plates belong, and only upon reaching the car and seeing the results of Deputy Prouty's computer search of Crane's Social Security number did he realize Crane's true identity. Detective Woodyard further testified that he was delayed in preparing the citation somewhat due to Crane's complaining about the stop, the search and the drug dog sniff of his vehicle.

{¶11} The trial court found that the state possessed sufficient reasonable suspicion to stop Crane on the basis of the fictious plate and, further, that the dog sniff conducted within 10 minutes of the stop was not unconstitutionally long given the circumstances of the stop and the length of time necessary to prepare a citation. Further, once a dog as alerted on the vehicle, the timing for preparing a citation is no longer relevant inasmuch as the state then possessed sufficient reasonable suspicion to search the car and reasonable suspicion of other criminal activity.  The trial court

further found that given the drug dog alert, the state possessed sufficient reasonable suspicion to open the silver lockbox, especially when the officer has noted the lockbox as a reason for suspecting drug trafficking in the first place.

{¶12} By Judgment Entry filed September 27, 2021, the trial court overruled Crane's motion to suppress.

{¶13} Crane subsequently notified the trial court he wished to change his plea. (*Motion to Cancel Jury Trial and Set Plea*, filed November 3, 2021). The state moved to amend count two of the indictment to Aggravated Trafficking in Methamphetamine in violation of R.C. 2925.03(A)(2)(C)(1)(e), a first-degree felony, which the trial court granted. (Judgment Entry, filed June 2, 2022).

{¶14} A change of plea and sentencing hearing was held on June 2, 2022. Crane pled no contest to all charges, and the court found him guilty of all charged counts. The court found that counts one and two merged for sentencing, and the state elected to proceed on count two. The court sentenced Crane to a prison term of eight to twelve years on count two, one year on count three, one year on count four, and one year on count five, to all run concurrently, and a one-year mandatory term on the firearm specification to run consecutively, for an aggregate prison term of nine to thirteen years. (Judgment Entry, filed June 2, 2022). The court further imposed a mandatory period of post-release control of two to five years, and granted the Forfeiture Specifications.

*Assignment of Error*

{¶15} Crane raises one Assignment of Error,

**{¶16}** "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS BECAUSE THE DOG SNIFF PERFORMED DURING THE STOP VIOLATED DEFENDANTS FOURTH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION AND THE RELEVANT SECTIONS OF THE OHIO CONSTITUTION."

*Law and Analysis*

**{¶17}** In his sole assignment of error, Crane contends that Officer Prouty failed to share information with Detective Woodyard thereby adding time to the traffic stop resulting in an unconstitutional delay.

**Standard of Appellate Review**

**{¶18}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra*, *citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d

539 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

*Failure to file transcript*

{¶19} We first note that a transcript of the suppression hearing has not been filed with this Court.

{¶20} Pursuant to App.R. 9(A)(1), "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." The party appealing has the duty to provide a transcript for appellate review as the appealing party bears the burden of showing error in the underlying proceeding by reference to matters in the record. *Dudley v. Dudley*, 12th Dist. Butler No. CA2013-09-163, 2014-Ohio-3992, ¶ 25, citing App.R. 9(B) and 16(A)(7).

{¶21} When portions of the transcript necessary for resolution of an assigned error are omitted from the record on appeal, the reviewing court has nothing to pass upon and thus has no choice but to presume the regularity or validity of the lower court's proceedings and affirm. *Knapp v. Edwards Laboratorie*s, 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385(1980); *State v. Williams,* 73 Ohio St.3d 153, 160, 1995-Ohio-275, 652 N.E.2d 721; *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 21, 520 N.E.2d 564 (1988);

*Whaley v. Young*, 12th Dist. Butler No. CA2019-11-189, 2020-Ohio-2981, ¶ 14, *citing*

*Spicer v. Spicer*, 12th Dist. Butler No. CA2005-10-443, 2006-Ohio-2402, ¶ 5; *State v.*

*Ridgway*, 5th Dist. Stark No. 1998CA00147, 1999 WL 100349 (Feb. 1, 1999), *citing*

*Knapp, supra; State v. McGee,* 5th Dist. Muskingum No. CT2019-0063, 2019-Ohio-

4569,¶12; *State v. Durr,* 5th Dist. Richland No. 18 CA 78, 2019-Ohio-807, ¶15; *University*

*Heights v. Johanan*, 8th Dist. Cuyahoga No. 110887, 2022-Ohio-2578, ¶12.  Accordingly,

given the absence of an appropriate record to support Crane's alleged error regarding the

trial court's denying of his motion to suppress, we presume the regularity of the

proceedings.

**Issue for appellate review:** *Whether the officers unlawfully seized Crane longer*

*than the time necessary to complete his traffic-based inquiries*

{¶22}  The Ohio Supreme Court has held,

"[W]hen detaining a motorist for a traffic violation, an officer may

delay the motorist for a time period sufficient to issue a ticket or a

warning.  *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562

N.E.2d 932]. This measure includes the period of time sufficient to run

a computer check on the driver's license, registration, and vehicle

plates. *State v. Bolden*, Preble App. No. CA2003–03–007, 2004–Ohio–

184 [2004 WL 77617], ¶ 17, *citing Delaware v. Prouse* (1979), 440 U.S.

648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. "In determining if an officer

completed these tasks within a reasonable length of time, the court must

evaluate the duration of the stop in light of the totality of the

circumstances and consider whether the officer diligently conducted the

investigation." *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], *citing State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

*State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, ¶ 12. In order to justify a continued detention beyond the normal period required to issue a citation the officer must have a "reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili,* ¶ 15. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci*, 11th Dist. No. 2001–L–205, 2003–Ohio–702, ¶ 30, *citing State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988)

**{¶23}** The use of a drug detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. *See Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). The officer needs no suspicion or cause to run the dog around the stopped vehicle if he or she does so contemporaneously with the legitimate activities associated with the traffic violation. Id. A canine walk-around of a vehicle, which occurs during a lawful stop and does not go beyond the period necessary to effectuate the stop does not violate the individual's constitutional rights. Id. However, the trooper may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Rodriguez v. U.S.,* 575 U.S. 348, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). The pertinent question is not whether the dog sniff occurs before or after the officer issues

or could have issued the initial ticket, but whether the dog sniff adds time to the stop. Id.

**{¶24}** In the case at bar, the dog was already on the scene at the time of the initial stop. Crane claims that because Officer Prouty decided to transfer the issuance of the citation to Detective Woodyard while he, Officer Prouty, retrieved his canine partner to conduct the free air sniff, he delayed the issuance of the traffic citation. Upon review, we find the actions of Officer Prouty did not add time to the stop.

**{¶25}** *State v. Wood,* 5th Dist. Licking No. 2021CA00082, 2022-Ohio-2548 cited by Crane is distinguishable. In *Wood* this Court found that,

> [The officer] acted unreasonably and without diligence by stalling for two minutes without processing the traffic stop to allow for the canine unit to arrive. Waiting for the canine unit to arrive and conduct a sniff indisputably added time to the stop. Therefore, [the officer] unreasonably prolonged the stop, and the trial court properly suppressed the evidence.

**{¶26}** In the case at bar, the traffic stop commenced at 11:05 a.m. By 11:16 a.m. the canine had alerted on the vehicle. According to the trial court, Officer Prouty testified it usually took him 10 to 15 minutes to write a traffic ticket or a warning. The trial court found,

> [H]e [Detective Woodyard] initially was unsure of the defendant's identity as he assumed the defendant would be the person to whom the license plates belong, *and only upon reaching the car and seeing the results of Deputy Prouty's computer search of the defendant's Social*

*Security number did he realize the defendant's true identity. Officer Woodyard further testified that he was delayed in preparing the citation somewhat due to the defendant's complaining about the stop and the search and the drug dog sniff of his vehicle.*

*Judgment Entry* at 3 (emphasis added).

**{¶27}** In *State v. Robinette*, the Ohio Supreme Court observed,

In sum, *Royer* and *Brown* set out a standard whereby police officers, under certain circumstances, may briefly detain an individual without reasonably articulable facts giving rise to suspicion of criminal activity, if the detention promotes a legitimate public concern, e.g., removing drunk drivers from public roadways or reducing drug trade.

In the case at bar, we find that, pursuant to *Royer* and *Brown*, Officer Newsome was justified in briefly detaining Robinette in order to ask him whether he was carrying any illegal drugs or weapons pursuant to the drug interdiction policy, because such a policy promotes the public interest in quelling the drug trade.

80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997). See also, *State v. Johns,* 5th Dist. Licking No. 19-CA-5, 2019-Ohio-4269, ¶ 17.

**{¶28}** In this case, the officers were involved in an investigation of drug activity at a local motel. Detective Woodyard had observed what he believed to be indications of drug activity involving the suspect car, including observing a male caring a small silver box into the car. Thus, the officers were justified in continuing the detention beyond the normal period required to issue a citation because the officers had a

"reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili,* ¶ 15. Therefore, even if the stop of Crane was delayed, no constitutional violation has been demonstrated.

**{¶29}** Nothing in the record suggests that the detention of Crane "was of sufficient length to make it constitutionally dubious." *See Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 14. Once the drug dog alerted to the vehicle, police had probable cause to search that vehicle for contraband.

**{¶30}** No violation of Crane's Fourth Amendment rights has been demonstrated. Therefore, we find the trial court correctly denied Crane's motion to suppress evidence.

**{¶31}** Crane's sole assignment of error is overruled.

**{¶32}** The judgment of the Licking County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur