[Cite as *State v. Zuniga*, 2021-Ohio-196.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| GERMAN ZUNIGA, | : | Case No. 2020 CA 0016 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Richland County
                              Court of Common Pleas, Case No.
                              2019-CR-0399

JUDGMENT:                     Affirmed

DATE OF JUDGMENT:             January 27, 2021

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

GARY BISHOP                               JOSEPH C. PATITUCE
Prosecuting Attorney                      Patituce & Associates, LLC
Richland County, Ohio                     16855 Foltz Industrial Parkway
                                          Strongsville, Ohio 44149
By: JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

**{¶1}**    Appellant, German Zuniga, appeals the decision of the Richland County Court of Common Pleas overruling his motion to suppress and finding him guilty of trafficking in cocaine, a violation of R.C. 2925.03 (A)(2) & (C)(4)(g), a first-degree felony; possession of cocaine, a violation of R.C. 2925.11 (A) & (C)(4)(f), a first-degree felony; aggravated funding of drug trafficking, a violation of R.C. 2925.05 (A)(3) & (C)(1), a first-degree felony; operating a vehicle with a hidden compartment used to transport a controlled substance in violation of R.C. 2923.241 (C) & (F), a second-degree felony; identity fraud, a violation of R.C. 2913.49 (B)(2) & (I)(2), a fifth degree felony;  a forfeiture specification pursuant to R.C. 2941.1417 as to the first three counts and a major drug offender specification pursuant to R.C. 2941.1410 with regard to the aggravated funding of drug trafficking charge and subsequently sentencing him to twenty-two and one-half years in prison. The State of Ohio is appellee.

**{¶2}**    Zuniga was a passenger in a vehicle driven by Kylie Newman on a trip from Texas to Ohio. The vehicle was stopped for speeding by the Ohio State Highway Patrol. As the driver searched for proof of insurance the Trooper led his dog around the vehicle. The dog detected the presence of illegal drugs in the vehicle and the Trooper discovered a large cache of cocaine in the false bottom of the toolbox and the driver, another passenger and Zuniga were arrested and charged.

**{¶3}**    All defendants moved to suppress the evidence discovered by the Trooper and after a hearing, the trial court denied the motion and Zuniga changed his plea to no contest and was found guilty.

**STATEMENT OF THE CASE AND THE FACTS**

{¶4} Trooper Cole Browne was on duty on February 6, 2019 when he was advised to watch for a vehicle. He received a description of the vehicle, license plate number, and the occupants. The Trooper was told that the vehicle may be carrying drugs and that if he had probable cause to stop the vehicle he should do so.

{¶5} When Trooper Browne first saw the vehicle he estimated that it was traveling at a speed in excess of the 55 mph limit. He confirmed the vehicle's speed with a laser and discovered that the driver's speed was 60 mph. The vehicle rapidly slowed from 60 mph to 54 mph and then to 50 mph.

{¶6} Trooper Browne trailed the vehicle and pulled beside it to confirm the number of passengers and to note their behavior. He saw three occupants and noticed that the driver and the front seat passenger appeared to be conversing while looking ahead and not making eye contact with each other. The Trooper described them as looking rigid and uncomfortable in their seats. The passenger had a cell phone and was holding it at what Trooper Browne characterized as an odd angle. While the Trooper agreed that these behaviors were not illegal, he did consider them uncharacteristic of "normal motoring public behavior."

{¶7} Once the Trooper reached a location where it was safe to pull off the road and the driver could not flee into an exit ramp, he activated his overhead lights to signal the driver to pull over. The drive complied, but positioned the vehicle so the driver's side was very close to the highway. Because the vehicle was stopped close to the road, Trooper Browne approached the passenger side of the vehicle and spoke with the driver through the passenger window. He requested the driver's license and the driver, Kylie

Newman, began frantically rummaging through her purse. Trooper Browne also requested proof of insurance at the outset of the stop. Zuniga passed documents from Newman to the Trooper and the Trooper noted that both looked very uncomfortable and Zuniga's hands were shaking as he passed the papers. Trooper Browne characterized the behavior of the driver and Zuniga as more nervous than he has experienced in past traffic stops.

{¶8} The proof of insurance that Newman provided had expired, so the Trooper returned the document and asked if she had valid proof of insurance. She continued to search and the Trooper asked her to exit the vehicle and enter his cruiser to make it easier to talk with her. She declined the invitation to enter the cruiser claiming to be claustrophobic, but did get out of the vehicle to speak with the Trooper. Newman suggested that the Trooper call her insurance company to confirm the validity of her coverage, but the Trooper was not willing to do so. He suggested that she may be able to find proof of her coverage on her cell phone. She agreed and began to search her phone.

{¶9} While she searched her cell phone for evidence of insurance, the Trooper asked about the starting point and destination of her trip. She explained that they were visiting Zuniga's relative in a Texas hospital where he was being treated for cancer, but she could not remember the name of the facility. She confirmed that she visited the relative and that they were in Texas for one week. When the Trooper asked where she was going she replied that she was going home to Lorain, Ohio, but the route she was driving took her away from Lorain.

{¶10} The uncharacteristic nervousness of the driver and passenger and the driver's answers to questions, in the context of the information that the car may contain drugs, led Trooper Browne to read the driver her Miranda rights. Once he read her rights, she asked for the opportunity to speak with her lawyer.  She reached her attorney by phone, and while she talked with her attorney, Trooper Browne moved away from her and back toward her vehicle.

{¶11} While Newman was speaking with her attorney, Trooper Browne asked Zuniga where they were heading. He answered "Lorain," but quickly corrected his response and explained that he was going to pick up a dress for his daughter and the driver did not know where they were going. Trooper Brown interpreted this response as inconsistent with the driver's description of their destination and further raised his suspicion. At this point Trooper Browne decided that he would use his dog, Atos, to sniff around the vehicle.

{¶12} Trooper Browne and his dog, Atos, completed three passes around the vehicle.  On the first pass, Atos did not alert to any scents and did not indicate the presence of narcotics.  On the second pass, Atos inhaled hot exhaust from the vehicle that interfered with his ability to perform, so Trooper Browne made a third pass.  During that sweep of the vehicle, Atos alerted to the scent of narcotics and indicated that there were drugs in the vehicle in the vicinity of a tool box in the back of the vehicle.  Trooper Browne opened the toolbox and discovered a false bottom concealing a very large amount of a white powder in plastic bags, later confirmed to be cocaine.

{¶13} Zuniga was charged with trafficking in cocaine, a violation of R.C. 2925.03 (A)(2) & (C)(4)(g), a first-degree felony; possession of cocaine, a violation of R.C. 2925.11

(A) & (C)(4)(f), a first-degree felony; aggravated funding of drug trafficking, a violation of R.C. 2925.05 (A)(3) & (C)(1), a first-degree felony; operating a vehicle with a hidden compartment used to transport a controlled substance in violation of R.C. 2923.241 (C) & (F), a second-degree felony; identity fraud, a violation of R.C. 2913.49 (B)(2) & (I) (2), a fifth degree felony with a forfeiture specification pursuant to R.C. 2941.1417 as to the first three counts and a major drug offender specification pursuant to R.C. 2941.1410 with regard to the aggravated funding of drug trafficking charge.

{¶14} Zuniga entered a plea of not guilty and filed a motion to suppress the evidence discovered in the search of the vehicle. At the hearing on the motion, Trooper Browne testified regarding the notification he received regarding the vehicle and the passengers and his traffic stop based upon speeding. He described the conversation with the driver and the occupants and his concern that the driver and Zuniga exhibited excessively nervous behaviors and gave inconsistent responses to questions about their destination. He concluded that the facts warranted using Atos to check for drugs, so, while Kylie Newman was searching for proof of insurance, he conducted three sweeps of the vehicle ultimately leading to the discovery of cocaine.

{¶15} Trooper Brown also described his training to become a canine officer certified to use a dog to detect narcotics as well as his dog's training to become certified to detect drugs. He described his experience with Atos, the dog assigned him, confirmed that both he and the dog were regularly certified to search for drugs and identified an exhibit consisting of records supporting Atos' training and reliability.

{¶16} The defendants offered the expert testimony of Andre Falco Jimenez who was critical of the Trooper's use of Atos to search for evidence of narcotics. Mr. Jiminez

claimed Trooper Browne's handling of Atos was inappropriate, leading the dog to alert not as a result of the scent of narcotics, but as a result of the improper encouragement by Trooper Browne. He questioned the training of Atos, and stated that his behavior during the passes around the vehicle indicates the dog was not focused on the task and was primarily acting to please Trooper Browne. He was also critical of how Atos alerted to the scent of the cocaine, laying down. He opined that the more acceptable and more distinct alert is to sit. Mr. Jiminez concluded by stating his opinion that Atos did not indicate the presence of illegal drugs in the vehicle.

**{¶17}** Sergeant Barrett of the Ohio State Highway Patrol was offered by the state in rebuttal of Mr. Jimenez's testimony. Barrett described his background in canine training and noted that his current primary responsibilities at the Ohio State Highway Patrol include supervision of the canine training program. He described the training received by Atos and Trooper Browne as well as the regular certification and qualification of Atos and Trooper Browne. He concluded that the sweep of the vehicle was appropriately conducted and that Atos was not mishandled, but clearly signaled his discovery of narcotics in the vehicle.

**{¶18}** The trial court denied the motion to suppress and Zuniga changed his plea to no contest. His change of plea was accepted by the trial court and he was sentenced to an aggregate of twenty-two and one-half years in prison and ordered to forfeit $1741.00. Zuniga filed a timely appeal and submitted five assignments of error:

**{¶19}** "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT TROOPER BROWNE DID NOT EXTEND THE TRAFFIC STOP BEYOND ITS ORIGINAL SCOPE IN ORDER TO CONDUCT A K9 SNIFF."

**{¶20}** "II. THE TRIAL COURT ERRED IN FINDING THAT THE K9 ALERTED ESTABLISHING PROBABLE CAUSE TO ALLOW A SEARCH OF THE VEHICLE AFTER THE K9 HAD BECOME INCAPACITATED WHEN THE K9 BURNT ITS NOSE ON THE EXHAUST OF THE VEHICLE ."

**{¶21}** "III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT QUALIFIED SERGEANT BARRETT AS AN EXPERT IN K9 TRAINING AND DRUG DETECTION."

**{¶22}** "IV. HE TRIAL COURT ERRED WHEN IT FAILED TO MERGE COUNTS ONE AND THREE OF THE INDICTMENT BECAUSE THEY ARE ALLIED OFFENSES."

**{¶23}** "V.THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES."

I.

**{¶24}** In his first assignment of error Zuniga contends that the trial court erred by denying the motion to suppress because it erroneously concluded that Trooper Browne had not extended the traffic stop beyond what was necessary to issue a traffic citation.

**{¶25}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th

Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside, supra*, quoting *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra. State v. Johns*, 5th Dist. No. 19-CA-5, 2019-Ohio-4269, 146 N.E.3d 1286, ¶ 11.

**{¶26}** Zuniga does not contest the validity of the traffic stop, but he does complain that the stop was merely a pretext for the search for drugs.  We previously addressed such a criticism and concluded that "[a] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable, articulable suspicion a traffic or equipment violation has occurred or is occurring. *City of Dayton v. Erickson*, (1996), 76 Ohio St.3d 3. It is irrelevant the officer may have had other subjective motives for stopping the vehicle. *Id.* " *State v. Ackerson,* 5th Dist. Stark No. 2012CA00228, 2013-Ohio-4020, ¶ 21. Exceeding the speed limit, even by five miles per hour, is a traffic violation that validates the Trooper's actions.  Further, the Trooper claimed that he regularly stopped drivers for such a violation.

**{¶27}** Fifteen minutes passed between the time that the Trooper stopped the vehicle and the discovery of cocaine in the tool box.  Appellant argues that Trooper Browne had the obligation to promptly issue a citation or a warning and end the stop before the discovery of the narcotics, but he does not expressly state what triggered that duty.  Trooper Browne asked the driver for proof of insurance as he was obligated to do

under R.C. 4509.101(D)(2). The driver first offered what turned out to be evidence of an expired insurance policy, so Trooper Browne asked the driver for proof of an active policy. The driver never conceded that she did not have an active policy or could not locate proof and continued searching for evidence while the Trooper waited.

**{¶28}** Trooper Browne explained that his next step during this stop was contingent upon Newman producing proof of insurance. He stopped Newman for exceeding the speed limit by five miles per hour. Trooper Browne explained that he would typically issue a warning in these circumstances if the driver produces proof of insurance. If the driver cannot supply proof of insurance, he would issue a citation and mark a box on the citation that proof of insurance had not been shown at the stop. The Trooper described this procedure as providing a driver, including Newman, the opportunity to avoid a citation.

**{¶29}** Zuniga contends that the Trooper could have issued a warning or a traffic ticket and released the driver and that the extension of the stop was unreasonable. He notes that the Trooper could have noted the failure to produce proof of insurance on the citation and allowed the driver to present the proof to the court pursuant to R.C. 4509.101. While the Trooper may have taken a different approach, he decided to wait for the proof of insurance, and the issue before this court is whether that delay was unreasonable under the circumstances.

**{¶30}** The Ohio Supreme Court has held,

[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's

license, registration, and vehicle plates. *State v. Bolden,* Preble App. No. CA2003–03–007, 2004–Ohio–184 [2004 WL 77617], ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation. *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

*State v. Batchili,* 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E .2d 1282, ¶ 12.

**{¶31}** To justify a continued detention beyond the normal period required to issue a citation the officer must have a "reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili,* ¶ 15. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. No. 2001–L–205, 2003–Ohio–702, ¶ 30, citing *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988).

**{¶32}** In *State v. Guinto,* 5th Dist. Ashland No. 12-COA-031, 2013-Ohio-2180 we found that a thirty-one minute delay attributable to the necessity that the driver provide valid proof of insurance was not an unreasonable extension of the detention of the parties. In that case, just as in this case, the Trooper was "waiting on the current insurance card for the driver and was asking questions of the occupants based upon the "indicators" that the Trooper observed." *Id.* at ¶ 34. In this case the detention was fifteen minutes from

the beginning of the stop until the drug dog indicated the presence of an illegal drug. Once the drug dog gave the indication, the Trooper had probable cause to search that vehicle for contraband and further extend the stop.

**{¶33}** Considering the totality of the circumstances, we find that the duration of the stop was not unreasonable and the Trooper diligently conducted his investigation. No violation of Zuniga's Fourth Amendment rights has been demonstrated.

**{¶34}** The first assignment of error is overruled.

II.

**{¶35}** Zuniga's second assignment of error is initially presented as an error relating to the consequences of Atos inhaling exhaust fumes and "burning" his nose, but includes argument regarding the credibility of witnesses and the alleged obligation of the court to issue a finding that Atos was reliable. Pursuant to App.R. 12(A)(1)(b), appellate courts must " 'determine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16.' Thus, this court rules on assignments of error only, and will not address mere arguments." *Ellinger v. Ho*, 10th Dist. No. 08AP–1079, 2010–Ohio–553, ¶ 70, quoting *In re Estate of Taris*, 10th Dist. No. 04AP–1264, 2005–Ohio–1516, ¶ 5. *Bonn v. Bonn,* 10th Dist. Franklin No. 12AP-1047, 2013-Ohio-2313, ¶ 9. In the interest of justice we will address the issues presented in the appellant's brief as well as the assignment of error.

**{¶36}** Zuniga makes reference to the lack of an express finding by the trial court that Atos was reliable, but provides no authority that requires such a finding. Further, he

failed to make this argument before the trial court.[1] As this alleged error is not supported by any authority aside from counsel's assertion, because it is not described in the assignment of error, and because it was not argued before the trial court, we will give it no further consideration and consider the argument regarding the reliability of Atos.

**{¶37}** The State must establish a dog's reliability by adducing evidence of its training and certification before an alert by the dog may be used to support a determination of probable cause, *State v. Lopez*, 166 Ohio App.3d 337, 2006–Ohio–2091, 850 N.E.2d 781, ¶ 25 (1st Dist.). Evidence of the K9's training and certification may be either testimonial or documentary. *State v. Mangan,* 2d Dist. Montgomery No. 23263, 2009–Ohio–6137.

**{¶38}** Trooper Browne provided the requisite testimonial evidence regarding Atos' training and certifications and supplemented it with documents verifying the dog's training and reliability. We have reviewed the record and find that the state provided sufficient evidence to demonstrate Atos' training, certification and reliability.

**{¶39}** Once the state established reliability, Zuniga had the opportunity to attack the dog's 'credibility' by evidence relating to training procedures, certification standards, and real-world reliability." (Citation omitted). *State v. Lopez,* Hamilton App. No. C–050088, 2006–Ohio–2091, ¶ 5. He did so by offering the testimony of an expert, Andre Falco Jimenez, who testified that he "did not observe the hallmarks of a well-trained, successful K9 doing scent detection." His ultimate opinion was that K9 Atos fell short of what one would expect of a typical dog trained to search vehicles. Jimenez was critical of

---

[1] The trial court asked that post hearing briefs regarding the motion to suppress be filed on Wednesday, December 11, 2019 and that he would issue his decision on Thursday, December 12, 2019. No briefs were filed on December 11, 2019 and the court issued its ruling on December 12th.

Trooper Browne's handling of the dog and he felt the dog exhibited strange behaviors. He concluded that there was no alert, or indication by the dog that the vehicle was carrying illegal drugs

{¶40} Zuniga is also critical of the dog's performance based upon a comment by the state's expert that the dog was incapacitated during the stop as a result of inhaling hot fumes. The state's expert, Sergeant Barrett, noted that the affect was temporary and Zuniga's expert, Jimenez, does not support Zuniga's contention as he opined that Atos was not near the exhaust long enough for a burn to result.

{¶41} On rebuttal, Sergeant Barrett described his own credentials and offered his opinion that Atos and Trooper Browne were properly trained and that while he had some criticism of Trooper Browne, Atos performed appropriately and the dog's indication of the presence of drugs was valid.

{¶42} Zuniga's argument under this assignment of error is reduced to a contest of credibility in his concluding sentences: "The trial court failed to rule on K9 Atos' reliability, and instead erroneously validated the sniff and subsequent search based on the credibility of the State's witnesses. As such, the trial court erred in denying Appellant's Motion to Suppress." We concluded above the appellant has provided no authority to support an obligation of the trial court to issue a finding of reliability, so that assertion will be disregarded. The remaining issue is whether the trial court erred by not considering Mr. Jimenez more credible.

{¶43} During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing

court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996).   We have reviewed the testimony of both experts and the documentary evidence provided regarding both and we find that the trial court's decision is supported by competent, credible evidence.

**{¶44}** Zuniga's second assignment of error is overruled.

III.

**{¶45}** Zuniga contends the trial court erred by permitting Sergeant Barrett to testify as an expert in training dogs in drug detection in his third assignment of error.   Pursuant to Evid.R. 104(A), the trial court determines whether a witness qualifies as an expert, and that determination will be overturned only for an abuse of discretion. *State v. Hartman,* 93 Ohio St.3d at 285, 754 N.E.2d 1150; *State v. Williams* (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444, as quoted in *State v. Thomas*, 97 Ohio St.3d 309, 2002–Ohio–6624, 779 N.E.2d 1017 ¶ 46.

**{¶46}** The Supreme Court of Ohio succinctly described the analysis for a determination of whether a witness may serve as an expert in *State v. Thomas*, 97 Ohio St.3d 309, 2002–Ohio–6624, 779 N.E.2d 1017 ¶ 46:

Neither special education nor certification is necessary to confer expert status upon a witness. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding

function." *State v. Hartman*, 93 Ohio St.3d at 285, 754 N.E.2d 1150; *State v. Baston*, 85 Ohio St.3d 418, 423, 709 N.E.2d 128.

**{¶47}** Sergeant Barrett was offered as an expert based upon nearly a decade of experience in "oversight and maintenance of Highway Patrol's thirty-five drug detection/patrol canine teams, training the Ohio State Highway Patrol's future canine trainers, selecting and testing canines and handlers for training, and oversight of maintenance training."

**{¶48}** Zuniga argues this experience must be disregarded because he had not previously testified and because he trained Trooper Browne. We find that these two points go to the weight to be given Sergeant Barrett's testimony and are not relevant to his qualifications as an expert.

**{¶49}** Sergeant Barrett provided sufficient evidence to demonstrate knowledge and experience in the field sufficient to assist the court in its determination. We hold that the trial court did not abuse its discretion in finding that Sergeant Barrett was qualified to serve as an expert.

**{¶50}** The third assignment of error is overruled.

IV.

**{¶51}** Zuniga contends, in his fourth assignment of error, that the trial court erred when it failed to merge the charges of Aggravated Funding of Drug Trafficking and the Trafficking in Cocaine for sentencing purposes because these charges were allied offenses of similar import.

**{¶52}** Appellate review of an allied-offense question is de novo. *State v. Miku*, 5th Dist. No. 2017 CA 00057, 2018-Ohio-1584, ¶ 70,appeal not allowed,154 Ohio St.3d 1479, 2019-Ohio-173, 114 N.E.3d 1207 (2019), quoting *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 12.

**{¶53}** Revised Code 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions by prohibiting convictions of allied offenses of similar import:

Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

*State v. Thompson*, 5th Dist. Licking No. 2019 CA 00097, 2020-Ohio-3249, ¶ 15.

**{¶54}** The application of R.C. 2941.25 requires a review of the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes,* 5th Dist. Coshocton No. 15CA0008, 2016-Ohio-880, ¶ 21. In a plurality opinion, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The

Court directed us to look at the elements of the offenses in question and determine "whether it is possible to commit one offense *and* the other with the same conduct."(Emphasis sic). *Id.* at ¶ 48. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. *Id.* at ¶ 49. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id.* at ¶ 51.

{¶55} Johnson's rationale has been described by the Court as "incomplete." *State v. Earley,* 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11. The Supreme Court of Ohio has further instructed us to ask three questions when a defendant's conduct supports multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

{¶56} Zuniga was charged with Trafficking in Cocaine, a violation of R.C. 2925.03(A)(2) and Aggravated Funding of Drug Trafficking in violation of R.C. 2925.05(A)(3) and he claims these charges must merge as allied offenses of similar import. The Trafficking charge states "[n] person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable

cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2). The funding charge makes it a crime to "knowingly provide money or other items of value to another person with the purpose that the recipient of the money or items of value use them to obtain any controlled substance for the purpose of violating section 2925.04 of the Revised Code or for the purpose of selling or offering to sell the controlled substance in the following amount * * * [i]f the drug to be sold or offered for sale is cocaine or a compound, mixture, preparation, or substance containing cocaine, an amount of the cocaine that equals or exceeds five grams." R.C. 2925.05(A)(3).

{¶57} The indictment described the trafficking offense as occurring on February 6, 2019 and the funding offense occurring over a period of time beginning July 1, 2015 and ending eight months prior to February 6, 2019 and was comprised of individual wire transfers of funds.

{¶58} We find that the trial court correctly determined that the charges did not merge. Under the *Johnson* analysis while it may be possible to commit both offenses with the same conduct, in this case it is evident that the multiple wire transfers comprising the funding and the February 6, 2019 act of trafficking were not committed by the same conduct.

{¶59} The *Ruff* opinion leads us to the same conclusion. We have reviewed the record and we find that the act of funding the purchases and the acting of shipping and transporting are of dissimilar import, as the harm from each is separate and identifiable and all were committed separately. Further, the commission of the first offense will not necessarily lead to the commission of the second offense. And, while these offenses

were arguably committed with the same motivation, that finding alone is insufficient to support merger.

**{¶60}** The fourth assignment of error is overruled.

V.

**{¶61}** In his fifth assignment of error, Zuniga contends the trial court erred when it imposed consecutive sentences under R.C. 2929.14.

**{¶62}** The trial court found that "consecutive sentences are necessary to protect the public from future crime or to punish the offender and consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and because:

X The offender committed one or more of the multiple offenses while being a fugitive from justice.

X At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

X The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." (Sentencing Entry, Jan. 7, 2020).

{¶63} Revised Code 2929.14(C)(4) authorizes the trial court to impose consecutive sentences when it finds such a penalty is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Code also requires that the trial court find that one of three conditions apply and, in this case, the court found all three conditions present, albeit with some liberties taken with the first condition.[2]

{¶64} Our authority to modify or vacate the trial court's sentence is limited to those circumstances where we clearly and convincingly find that "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant[or] [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a), (b). Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State v. Silknitter*, 3rd Dist. Union No. 14–16–07, 2017–Ohio–327, ¶ 7 quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, ¶ 1, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but does not require the certainty of "beyond a reasonable doubt." *Marcum,* at ¶ 22 quoting *Ledford.*

---

[2] The trial court edited 2919.14(C)(4)(a) to read "The offender committed one or more of the multiple offenses while *being a fugitive from justice* ~~the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control~~ for a prior offense." (Sentencing Entry, Jan. 7, 2020).

**{¶65}** Zuniga's argument reverses the standard of review as he argues that "[t]he record does not clearly and convincingly support any of the three required findings under R.C. 2929.14(C)( 4)," that "* * * the trial court's finding under R.C. 2929 .14(C)( 4)(b) is not supported by clear and convincing evidence" and that "* * * the record does not support the trial court's finding by clear and convincing evidence." To warrant modification of the sentence, Zuniga must show clear and convincing evidence that the record does not support the sentence. *State v. Kitts,* 5th Dist. Knox No. 17 CA 09, 2018-Ohio-366, ¶ 21. Zuniga is attempting to improperly shift the burden to the state to show that the sentence was supported by clear and convincing evidence which is not the correct standard of review. This misstatement of the standard of review undermines Zuniga's argument and, when we apply the correct standard of review, we find no error.

**{¶66}** Zuniga takes issue with the trial court's finding that his offenses "were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offenders conduct." He contends that as a result of his arrest, he caused no harm.

**{¶67}** While Zuniga's was denied the opportunity to distribute the twenty-two pounds of cocaine he brought into Ohio, his actions of purchasing and transporting such a large amount supports the illicit drug industry which has caused continuous harm to the public and underlies many criminal offenses. Zuniga has financed the production of more cocaine, increasing the likelihood of future criminal offenses by others and continued drug addiction as well as all of the burdens the illegal drug market imposes on the public.

Zuniga's argument that he has committed no harm ignores the consequences of his actions.

{¶68} We find that Zuniga has not provided clear and convincing evidence that the record did not support the trial court's conclusion that the multiple wire transmissions used to fund drug trafficking and the trafficking of twenty-two pounds of cocaine are multiple offenses that were committed as part of one or more courses of conduct, and the harm caused by then was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. R.C. 2929.14(C)(4)(b). The record before the trial court supports its finding that consecutive sentences were appropriate to protect the public, considering the nature of the offenses committed by Zuniga.

{¶69} The fifth assignment of error is denied.

{¶70} The decision of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, John, P.J. and

Delaney, J. concur.